UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-cv-24574-PCH

YRIS RODRIGUEZ,

    Plaintiff,
v.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINES,

    Defendant.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS AND PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, YRIS RODRIGUEZ, by and through undersigned counsel, hereby files Plaintiff's Response to Defendant's Statement of Material Facts (DE 42) and Plaintiff's Statement of Additional Material Facts in Opposition to Defendant's Motion for Summary Judgment, and states as follows:

**Plaintiff's Response to Defendant's Statement of Material Facts**

1. Undisputed.  However, it was a crew staircase, not a passenger staircase.  (DE 42-6, p. 23, L 16-17).

2. Undisputed.

3. Undisputed but irrelevant.  This is not a foreign substance case.

4. Undisputed.

5. Undisputed, but irrelevant.

6. Undisputed, but irrelevant.

7. Undisputed, but irrelevant.

1

8. Undisputed.

9. Undisputed.

10. Disputed. She did so only by holding onto the handrail.

11. Undisputed, but irrelevant. There was no foreign substance.

12. Undisputed, but irrelevant.

13. Undisputed, but irrelevant.

14. Undisputed, but irrelevant.

15. Undisputed, but irrelevant.

16. Undisputed, but irrelevant. *See Easterwood v. Carnival Corp.*, 2021 WL 1152398, at *9 (S.D. Fla. 2021) (and cases cited therein).

17. Undisputed.

18. Undisputed.

19. Undisputed.

20. Undisputed that Mr. Pynadeth testified he did not find anything abnormal or unusual for this **crew** stairway.

21. Disputed. The stairs were designed for and commonly used by crewmembers, not passengers. (DE 41-6, p. 23 L 16-17). CARNIVAL crewmembers directed the Plaintiff to utilize the stairway, knowing that it was dangerously steep, but without warning her. (SAMF paras. 145-151).

22. Undisputed.

23. Undisputed.

24. Disputed; the Plaintiff was not aware of the availability of the forward elevator, and she was commanded to use the crew stairway by a CARNIVAL crewmember. (SAMF 145-

149).

25. Undisputed. Any claim of a foreign substance has been withdraw.

26. Disputed. CARNIVAL's own expert testified that the handrail failed to meet applicable standards because it did not extend pass the final step, where the Plaintiff fell. (DE 42-8, p. 38 L 5-11).

27. Undisputed that he so testified, but it did move when Plaintiff's expert tested it. (SAMF 164).

28. Disputed. CARNIVAL placed the warning sign **after** Ms. Rodriguez fell. Ten days later another passenger fell down a similar crew stairway. See attached Complaint in the matter of *Torrents v. Carnival Corp.*, Case No. 19-cv-24760-JLK. (Exhibit A.)

29. Disputed. See response to paragraph 28.

30. Disputed. The stairs existed as a crew stairway for many years, and there had been incidents involving crew and passengers. (SAMF 139-141).

31. Disputed. CARNIVAL's own expert testified that the stairs are (1) steeper than other stairways on the vessel, which can increase the risk of a fall, (2) steeper than landside stairways, and (3) the handrail violated applicable standards by not extending past the last step, where the Plaintiff fell. (SAMF 157-159; 161-165).

32. Disputed. Both Carnival Corporate Representatives testified to a prior substantially similar incident. (SAMF 140).

33. Undisputed, but irrelevant.

34. Disputed. The Plaintiff was given no option; she was directed to take the crew stairway. (SAMF 145-148).

35. Undisputed, but irrelevant.

36. Undisputed that he so testified, but both CARNIVAL Corporate Representatives knew of a prior substantially similar incident. (SAMF 145-148).

37. Undisputed, unsurprising, and irrelevant. That opinion goes to comparative negligence, at best.

38. Disputed. They took the stairway because they were ordered to do so by a CARNIVAL crewmember. (DE 42-1, 51:8-13).

39. Undisputed that the Plaintiff did not have any issues with other stairs which were designed for and intended for use by *passengers*, unlike the crew stairway she was descending for the first time.

40. Undisputed.

41. Undisputed.

42. Undisputed.

43. Undisputed, but irrelevant. Plaintiff has withdrawn any claim of a foreign substance.

44. Undisputed, but irrelevant.

45. Undisputed.

46. Undisputed.

47. Undisputed. Nor was she advised to do so.

48. Undisputed, but irrelevant to the Motion for Summary Judgment.

49. Undisputed. But Plaintiff's daughter did not feel a need to go down the steep stairway at an angle, like her mother did.

50. Undisputed.

51. Undisputed.

52. Undisputed.

53. Undisputed.

54. Undisputed.

55. Undisputed.

56. Disputed.  This is a testimony of the Plaintiff's daughter, not the Plaintiff.

57. Undisputed, but irrelevant.  See *Easterwood v. Carnival Corp.*, 2021 WL 1152398, at *9 (S.D. Fla. 2021) (and cases cited therein) (That a plaintiff is uncertain of the precise reason she slipped or fell is irrelevant and does not bar her claim).

58. Undisputed.  The Plaintiff did not slip on a foreign substance.

59. Disputed.  This is Plaintiff's daughter's testimony.

60. Undisputed, but CARNIVAL's corporate Representative testified that the video is inconclusive as to whether Plaintiff's foot touched the edge of the step.  (DE 42-9 p. 18 of 22).

61. Undisputed, but irrelevant.

62. Undisputed.

63. Undisputed, but irrelevant.

64. Undisputed, but irrelevant.  This is not a negligent design case.

65. Undisputed, but irrelevant.  This is not a negligent design case.

66. Undisputed, but irrelevant.  This is not a negligent design case.

67. Undisputed, but irrelevant.  This is not a negligent design case.

68. Undisputed, but irrelevant.  This is not a negligent design case.

69. Undisputed, but irrelevant.  This is not a negligent design case.

70. Undisputed, but irrelevant.  This is not a negligent design case.

71. Undisputed, but irrelevant as to all issues except that the handrails were not in

position because they did not extend to the final step where the Plaintiff fell.

    72.    Undisputed that Mr. Durante so testified.

    73.    Disputed.  CARNIVAL's own liability expert, Bryon Emond, stated in his report that the video was *inconclusive* as to whether Plaintiff's foot contacted the edge of the last step. (DE 42-9 p. 18 of 22)

    74.    Disputed.  This is merely the opinion of CARNIVAL's Corporate Representative, not an undisputed fact.

    75.    Disputed.  There is no record evidence of inspections.

    76.    Undisputed.

    77.    Undisputed.

    78.    Disputed.  There is no evidence that 1,733,000 passengers used this stairway to disembark this vessel.  There are three disembarkation points.

    79.    Undisputed, but irrelevant.  CARNIVAL has not established how many exited via that crew stairway, which was the vessel's "third gangway."

    80.    Undisputed.

    81.    Undisputed.

    82.    Undisputed.

    83.    Disputed.  Bryan Emond testified that MSC/Cir 735, Title "*Recommendation on the Design and Operation of Passenger Ships To Respond to Elderly and Disabled Persons Needs*," applies, and addresses elderly passengers.  (SAMF 158; DE 42-9, p. 7).

    84.    Undisputed.

    85.    Undisputed.

    86.    Undisputed, but irrelevant.

87. Disputed, but irrelevant.

88. Disputed. CARNIVAL's own expert testified that the handrail violates applicable standards by not extending past the final step. (DE 42-8, p. 38 L 5-11).

89. This is a disputed "opinion," and not appropriate for a Statement of Material Facts.

90. Disputed. This is merely an opinion.

91. Disputed. This is merely an opinion. 11th Circuit authority disagrees.

92. Disputed. This is merely an opinion of CARNIVAL's retained expert, not a statement of fact.

93. Disputed. It is not appropriate for passenger use.

94. Disputed. There is no record evidence of any United Stated Coast Guard inspection. This is merely an opinion.

95. Disputed. There is also no evidence that the *Carnival Victory*, was not detained by Panama due to an issue with the subject stairway or any other stairway.

96. Undisputed, but irrelevant.

97. Disputed. There is no verification for this statement or any proof of inspections during the relevant time period.

98. Disputed. There is no evidence that such investigations occurred or that the Coast Guard is aware that a crew stairway behind a "Crew Only" door, was used by passengers.

99. Disputed. This is merely an expert's opinion.

100. Disputed. There is no direct evidence of such investigations.

101. Undisputed, and there is no evidence that the U.S. Coast Guard ever inspected the vessel or that the U.S.C.G. has **not** noted a discrepancy with respect to the subject stairway.

102. Undisputed, but irrelevant.

103. Disputed. This is merely an opinion.

104. Disputed. What buildings?

105. Undisputed, but irrelevant. This is not a negligent design case.

106. Disputed, and irrelevant.

107. Undisputed.

108. Disputed. This is merely an opinion.

109. Undisputed, but irrelevant. The steps were designed for crew, not passengers.

110. Undisputed, but it is also undisputed that the handrail did not extend far enough under applicable guidelines. (SAMF 158).

111. Disputed. Mr. Lodge initially said "possibly," (DE 41-2, p. 36), but then clarified that he has no idea what Plaintiff "appreciated." (DE 42-8, p. 36 L 23-24).

112. Disputed. Plaintiff testified she thought these were normal steps.

113. Disputed. Unless there were 100 steps, she did not make it 99% of the way.

114. Undisputed, but irrelevant.

115. Undisputed. Plaintiff has withdrawn any claim of foreign substance.

116. Undisputed, but there is evidence that CARNIVAL maintained a stairway that CARNIVAL acknowledged was dangerous to passengers, and failed to warn Ms. Rodriguez of the danger.

117. Undisputed, but irrelevant, as the Plaintiff was not escaping anything at the time of her injury.

118. Undisputed but irrelevant.

119. Undisputed, but irrelevant.

120. Undisputed.

121. Undisputed.

122. Undisputed.

123. Undisputed.  However, CARNIVAL's own liability expert does offer the opinion that the central stairway handrail violates IMO/MSC Circular 735.  (SAMF 158).

124. Undisputed.  However, CARNIVAL's own liability expert offered the opinion that the central stairway handrail violated IMO/MSC Circular 735.  (SAMF 158).

125. Undisputed.  Plaintiff's liability expert was retained to provide opinions that the steepness of the stairway would have been unfamiliar to the Plaintiff descending them for the first time, as they are steeper than any other staircase the Plaintiff would have encountered on the vessel or on land.

126. . Undisputed.  Plaintiff's liability expert was retained to provide opinions that the steepness of the stairway would have been unfamiliar to the Plaintiff descending them for the first time, as they are steeper than any other staircase the Plaintiff would have encountered on the vessel or on land.

127. Disputed.  There is considerable evidence in the record (set forth in the Plaintiff's Statement of Additional Material Facts) that CARNIVAL negligently maintained these stairways for passenger use, instead of for use solely by crewmembers, as the stairway was designed and built to accommodate crewmembers, not passengers.

128. Disputed.  Plaintiff's expert was not retained to offer such opinions.  However, there is significant evidence in the record set forth in the Plaintiff's Statement of Additional Facts which show that CARNIVAL failed to correct a dangerous condition, i.e., sending passengers down a steep stairway designed and intended solely for use by crewmembers, without

warning her.

129.    Disputed.  Both the Plaintiff and the Plaintiff's daughter testified that there was no sign warning of the steepness of the stairs when they were ordered to take the stairs.  (SAMF 150-151; 155).

130.    Undisputed, but irrelevant.  CARNIVAL's two corporate representatives are aware of a substantially similar passenger incident occurring on that staircase or a substantially similar staircase within a few months prior to the Plaintiff's fall.  (See Plaintiff's Statement of Additional Material Facts below, paragraphs 140 and 141).

131.    Undisputed, but irrelevant.  Plaintiff is not pursuing a claim that the riser heights were inconsistent.

132.    Undisputed, but irrelevant.  That was not the purpose for which Mr. Lodge was retained.

133.    Undisputed.  Mr. Lodge is not an expert on maritime standards.  However, the inclination of the stairs was steeper than other passenger stairs on the vessel, and any other stairs which the Plaintiff would have encountered on land.  (Exhibit B, p. 11).

134.    Undisputed, but irrelevant.

135.    Undisputed, but irrelevant.

136.    Disputed.  See Plaintiff's Statement of Additional Material Facts, paragraphs 157-159; 163-166.

137.    Disputed.  CARNIVAL's own expert testified that the video was inconclusive as to whether the Plaintiff completely missed the last step.  Regardless, whether or not the steepness of the stairway caused her to misstep, and whether the failure to extend the center handrail, or make it sturdy, contributed to the incident are questions of fact for the jury to determine.

**Plaintiff's Statement of Additional Material Facts**

138.   CARNIVAL's corporate representative agreed that the purpose of the warning sign is to let the passengers know that these stairs are steeper than other stairs on the vessel.  (DE 42-6, p. 36, L 7-14).

139.   CARNIVAL's corporate representative testified that there have been prior falls on the stairs by both passengers and crew.  (DE 42-6, p. 38 L 8-11).

140.   Both CARNIVAL's corporate representatives testified that another passenger had a similar fall, missing the last step, and landing on her knee..  (DE 42-6, p. 39 L 5-11).  That similar fall occurred on October 13, 2017, prior to Ms. Rodriguez' fall.  (DE 42-7, Corp. Rep Vazquez depo p. 37 L10; p. 37 L 21 - 38 L 5).

141.   CARNIVAL's corporate representative, Susanne Vazquez, testified that there was a virtually identical prior incident where a female passenger was descending these stairs and accidently missed the last step from the bottom of the stairs.  (DE 42-7, p. 37 L 21-25).

142.   Passengers are also warned in general about going up and down stairs via a safety video broadcast inside their cabins in a daily program.  (DE 42-6, p. 42 L 5-15).  Those warnings are all in English.  (DE 42-1, p. 54 L 15-20).  Ms. Rodriguez does not read or speak English. (42-1, p. 4 L 4-7; p. 34 L 9-10).

143.   CARNIVAL's corporate representative testified that if a crewmember sees a passenger about to go down these stairs carrying a hat in their hands, the employee could tell the passenger to use the elevator or help them carry their belongings down the stairs.  (DE 42-6, p. 49 L 1-8).

144.   Plaintiff and her daughter were staying on the lowest deck.  Passengers on higher decks had the option of leaving the vessel via other routes.  (DE 42-3, Diaz dep., p. 17 L 8-21).

145. They were directed to go down the steps to disembark more quickly. (DE 42-3, Diaz Dep. p. 18 L 6-9).

146. They were directed by a CARNIVAL employee. (*Id.* L 10-12).

147. The CARNIVAL employee was standing next to the stair doors and directed them down the stairs. (*Id.*, p. 18 L 21 - 19 L 7).

148. Plaintiff and her daughter were ordered to go down the crew's stairs by a CARNIVAL employee who said they had to use those stairs. (DE 42-1, Rodriguez depo. p. 51 L 8-13).

149. The man who directed them down the staircase was wearing a CARNIVAL name tag. (DE 42-1; Rodriguez depo., p. 55 L 24-25).

150. Ms. Rodriguez does not recall seeing any signs at the top of the stairs. (DE 42-1, Rodriguez depo., p. 57 L 2-5).

151. When shown the warning sign at her deposition, the Plaintiff testified that she cannot read it. (DE 42-1, Rodriguez depo., p. 79 L 15-17).

152. CARNIVAL does not dispute that its employees were directing passengers down the crew stairway in order to get off in the port of Nassau. (D 42-7, CARNIVAL corp. rep. Vazquez, p. 26 L 13-15).

153. The chief security officer investigating the incident did not interview the person who directed the passengers down the stairway. (DE 42-7, CARNIVAL corp. rep. Vazquez, p. 27 L 3-5).

154. The Plaintiff's daughter had never seen stairs like this before on prior cruises. (DE 42-3, Diaz depo., p. 20 L 22-25).

155. She did not see any sign at the top of the stairway. (DE 42-3, p. 21 L 11-13).

156. Even if her mother, the Plaintiff, saw the sign she can't read English. (DE 42-3, Diaz Depo., p. 23 L 6-7).

157. CARNIVAL's retained liability expert, Bryan Emond, testified that a steeper stairway may increase the risk of a fall. (DE 42-8, Emond depo., p. 43 L 13-14).

158. CARNIVAL's retained liability expert, Bryan Emond, conceded that the handrail on the stairway violated MSC/Cir. 735 which recommends that the handrail should extend beyond the step by 11.8 inches. (DE 42-8, Emond depo., p. 37 L 14-17).

159. CARNIVAL's expert Emond also testified that this stairway is steeper than any of the other stairways he's aware of on the vessel. (DE 42-8, Emond depo., p. 31 L 12-15).

160. CARNIVAL's liability expert, Bryan Emond, stated in his report that the video was inconclusive as to whether the Plaintiff's foot contacted the edge of the last step. (DE 42-9, p. 18-22).

161. CARNIVAL's expert agreed that the center handrail that Ms. Rodriguez was holding was not fixed; it has some lateral motion. (DE 42-8, Emond depo., p. 32 L 6-11).

162. CARNIVAL's expert agreed that the purpose of the sign that was supposed to be posted was a warning to passengers to make them aware that this stairwell was steeper than other stairwells. (DE 42-8, Emond depo., p. 32 L 3-5).

163. CARNIVAL's liability expert, Bryan Emond, testified that the purpose of having the handrail extend past the last step was so that was somewhere to grip for the last step specifically, and this handrail did not do that. (DE 42-8, Emond depo., p. 38 L 5-11).

164. The center handrail (the one that Ms. Rodriguez was holding at the time of her incident) was added after ship construction, by CARNIVAL, is not sturdy or rigid. (DE 42-10, p. 148 L 19-21).

165. Because the center handrail did not extend beyond the bottom of the stair it provides a misleading visual que as to where the stair ends; in addition the height of the handrail did not help Ms. Rodriguez arrest her fall. Given the center of gravity and the height of the handrail. (DE 42-10, p. 64 L 13-20).

166. The tread depths, rise heights, and angle of inclination of the stairway do not conform to land-based codes which is important because that is what people normally encounter in their day today activity. (DE 42-10, p. 72 L 3-5).

167. This was the first time that Ms. Rodriguez used these stairs and obviously she had difficulty at the bottom of the stairs. (DE 42-10, p. 72 L 10-13).

168. Studies show that the majority of accidents on stairs happen either on the first step or within the last three bottom steps. (DE 42-10, p. 72 L 23 – 73 L 1).

169. Plaintiff's architectural expert, Thomas Lodge, was not hired to opine on maritime standards. Rather, he was retained to evaluate how the configuration of this cruise stairway differed from the configuration of typical stairs located on land-based commercial buildings that cruise line customers would encounter in their day-to-day lives. (DE 42-10, p. 91 L 5-14).

170. Mr. Lodge explained that crew stairways can be different because the crew spend all their time working on vessels whereas the passengers are transient lodgers on a floating hotel and are not familiar with the environment. (DE 42-10, p. 96 L 18-24).

171. Plaintiff's expert architect, Thomas Lodge, opined that "the subject crew stair had higher risers and shorter treads than what is normally encountered in commercial buildings. This combination created a steeper stair than what is normally encountered in commercial buildings. As a consequence, by definition, the crew stair was excessively steep and was hazardous.

(Exhibit B, Expert Report).

                                     **Philip D. Parrish, P.A.**
                                     *Co-counsel for Plaintiff*
                                     7301 SW 57th Court, Suite 430
                                     Miami, Florida 33143
                                     Tel. 305-670-5550/Fax: 305 670-5552
                                     Email: phil@parrishappeals.com
                                                     betty@parrishappeals.com

                           By:   */s/ Philip D. Parrish*
                                     Philip D. Parrish
                                     Florida Bar No. 0541877

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court via CM/ECF on August 17, 2021. I also certify that the foregoing was served on all counsel or parties of record on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

                           By:   */s/ Philip D. Parrish*
                                     Philip D. Parrish
                                     Florida Bar No. 0541877

## **SERVICE LIST**

David J. Horr, Esq.
dhorr@admiral-law.com
Juan C. Perez, Jr., Esq.
jperez@admiral-law.com
Horr, Novak & Skipp, P.A.
Two Datran Center, Suite 1700
9130 S. Dadeland Blvd.
Miami, FL  33156
Tel. 305-670-2525
Fax 305-672-2526
*Counsel for Defendant*

Brian F. LaBovick, Esq.
brian@labovick.com
LaBovick & LaBovick
5220 Hood Road
Second Floor
Palm Beach Gardens, FL  33418
Tel. 561-625-8400
Fax 561-627-3209
*Counsel for Plaintiff*